BRADLEY H. COHEN
bradley.cohen@cfpb.gov (admitted pro hac vice)
CHELSEA M. PETER
chelsea.peter@cfpb.gov (admitted pro hac vice)
Consumer Financial Protection Bureau
BRIAN E. J. MARTIN
brian.martin@cfpb.gov (admitted pro hac vice)
Consumer Financial Protection Bureau
1700 G Street, N.W.
Washington, D.C. 20552
Tel.: 202-435-9280
Tel.: 202-808-6277
Fax: 202-435-5471

JOSEPH M. LAKE (CA Bar No. 246679)
joseph.lake@cfpb.gov
Local Counsel for Consumer Financial Protection Bureau
Tel.: 202-897-8360
301 Howard Street, Suite 1200
San Francisco, CA 94105
Fax: 415-844-9788

Attorneys for Plaintiff
Consumer Financial Protection Bureau

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, Plaintiff, <br><br> v. <br><br> SOLO FUNDS, INC., Defendant. | Case No. 2:24-cv-04108-RGK-AJR <br><br> **CONSUMER FINANCIAL PROTECTION BUREAU'S OPPOSITION TO SOLO FUNDS, INC.'S MOTION TO DISMISS AMENDED COMPLAINT** <br><br> Judge: Hon. R. Gary Klausner <br> Room: <br><br> Hearing: Oct. 7, 2024 at 9:00 AM |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ...................................................................................1

LEGAL STANDARD ............................................................................ 2

ARGUMENT ......................................................................................... 3

    I.    The Bureau's Funding Is Valid and Provides No Basis for Dismissal. ................................................................................. 3

    II.    The Amended Complaint States a Claim Under the CFPA Based on SoLo's Deceptive Advertising. ...................................... 6

    III.    The Amended Complaint States a Claim Under the CFPA Based on SoLo's Deceptive Disclosures. ................................... 10

    IV.    The Amended Complaint States a Claim Under the CFPA for SoLo's Unfair, Deceptive, and Abusive Servicing and Collection of Loans. ................................................................... 11

        A.    The Amended Complaint plausibly alleges that SoLo loans are void and uncollectible due to SoLo and its lenders' unlicensed activity in violation of the laws in the Subject States. ................................................................. 13

        B.    The Amended Complaint plausibly alleges that SoLo loans are void and uncollectible due to SoLo's usurious fees in violation of the laws in the Subject States. ................................................................................. 16

        C.    The Amended Complaint plausibly alleges SoLo violated the CFPA by unfairly collecting amounts consumers did not owe with no countervailing benefits. ........................................................................... 18

    V.    The Amended Complaint States a Claim Under the Fair Credit Reporting Act Because SoLo Is a Consumer Reporting Agency. ..................................................... 19

CERTIFICATE OF COMPLIANCE ................................................... 23

CERTIFICATE OF SERVICE ............................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*Abdallah v. LexisNexis Risk Sols. FL Inc.*, No. 19-CV-3609 (RRM) (VMS), 2021 WL 1209419 (E.D.N.Y. Mar. 30, 2021)................................................20

*Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406 (9th Cir. 1990)................ 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................3, 8

*Austin v. Ala. Check Cashers Ass'n*, 936 So.2d 1014 (Ala. 2005).................. 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................3

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156 (9th Cir. 2016) ...........................................................................................................................2

*CFPB v. CashCall, Inc.*, 35 F.4th 734 (9th Cir. 2022)................................12, 13

*CFPB v. CashCall, Inc.*, No. CV 15-7522-JFW (RAOx), 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016) ......................................................................... 12

*CFPB v. Chou Team Realty LLC*, No. 8:20-CV-00043-SB-ADS, 2021 WL 4077110 (C.D. Cal. Aug. 10, 2021) .............................................................11

*CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016) ..............................................6

*CFPB v. NDG Fin. Corp.*, No. 15-cv-5211 (CM), 2016 WL 7188792 (S.D.N.Y. Dec. 2, 2016) .............................................................................................12, 18

*CFPB v. Nesheiwat*, No. 21-56052, 2022 WL 17958636 (9th Cir. Dec. 27, 2022) ..........................................................................................................11

*CFPB v. Think Finance, LLC*, No. CV-17-127-GF-BMM, 2018 WL 3707911 (D. Mont. Aug. 3, 2018) .........................................................................12, 18

*District of Columbia v. Elevate Credit, Inc.*, 554 F. Supp. 3d 125 (D.D.C. 2021)........................................................................................................ 15

*FTC v. DeVry Educ. Grp., Inc.*, No. CV-16-00579-MWF-SSx, 2016 WL 6821112 (C.D. Cal. May 9, 2016)...................................................................7

*FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993).....................................9

*FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001) ........................................................7

*FTC v. Gill*, 71 F. Supp. 2d 1030 (C.D. Cal. 1999) ........................................ 7, 9

*FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052 (C.D. Cal. 2012) ........................................................................................................... 11

*FTC v. LendingClub Corp.*, No. 18-CV-02454-JSC, 2018 WL 11436309 (N.D. Cal. Oct. 3, 2018) ....................................................................................... 8

*FTC v. Medlab, Inc.*, 615 F. Supp. 2d 1068 (N.D. Cal. 2009) ......................... 11

*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994) ................................... 11

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) .............................................. 9

*Gerstenhaber v. Client Res. Grp., Inc.*, No. 8:19-CV-02004-JLS-ADS, 2020 WL 3883281 (C.D. Cal. June 19, 2020) ..................................................... 19

*In the Matter of Dollar Loan Center of South Dakota, LLC*, Order No. 2017-2 (S.D. Div. of Banking Sept. 13, 2017) ........................................................ 17

*Kraft, Inc. v. FTC*, 970 F.2d 311 (7th Cir. 1992) .............................................. 9

*McGhee v. Arkansas State Bd. of Collection Agencies*, 375 Ark. 52, 289 S.W.3d 18 (2008) ....................................................................................... 17

*People v. Debt Resolve, Inc.*, 387 F. Supp. 3d 358 (S.D.N.Y. 2019) .............. 15

*Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962 (9th Cir. 1975) ................. 9

*Sandofsky v. Google LLC*, No. 21-10052, 2021 WL 2941128 (D. Mass. July 13, 2021) ......................................................................................................... 21

*Sandofsky v. Google LLC*, No. 21-1628, 2023 WL 9785578 (1st Cir. Sept. 6, 2023) ........................................................................................................... 21

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035 (9th Cir. 2010) ...................................................................................................................... 2

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002) ......................................... 3

*Tierney v. Advoc. Health & Hosps. Corp.*, 797 F.3d 449 (7th Cir. 2015) ....... 21

*Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023) ....................... 4

*United States v. Grote*, 961 F.3d 105, 111 (2d Cir. 2020) ............................... 14

*United States v. MyLife.com, Inc.*, 567 F. Supp. 3d 1152 (C.D. Cal. 2021) ..... 11

*Woodward v. Collection Consultants of California,* 381 F. Supp. 3d 1234,
1236-38 (C.D. Cal. 2019)............................................................................... 13

**Statutes**

12 U.S.C. § 5390(n)(2) ..................................................................................... 6

12 U.S.C. § 5465(c) .......................................................................................... 6

12 U.S.C. § 5497 ...................................................................................... 3, 5, 6, 7

12 U.S.C. § 5531(c)(1) .................................................................................... 22

12 U.S.C. § 5536(a)(1)(B) ............................................................................... 7

12 U.S.C. §§ 289-290 ....................................................................................... 6

12 U.S.C. §§ 5531(a) ....................................................................................... 7

15 U.S.C. § 1601(a) .......................................................................................... 9

15 U.S.C. § 1605(a) ........................................................................................ 10

15 U.S.C. § 1681a ..................................................................................... 19, 20

15 U.S.C. § 1681a(f) ....................................................................................... 21

205 Ill. Comp. Stat. § 670/1 ......................................................................... 18

815 Ill. Comp. Stat. § 122/1-10 .................................................................... 17

815 Ill. Comp. Stat. §§ 122/1-10 .................................................................. 18

Ala. Code § 5-18-4 .................................................................................... 17, 18

Anti-Deficiency Act, 31 U.S.C. § 1341 *et seq.* ............................................. 7

Ariz. Rev. Stat. Ann. § 6-601(5) ................................................................... 17

Conn. Gen. Stat. Ann. §§ 36a-556(a)(2)-(3) ............................................... 17

Idaho Stat. §28-46-402 .................................................................................. 17

Mass. Gen. Laws ch. 140, §§ 96, 110 .......................................................... 17

Md. Code Ann., Com. Law § 14-1901............................................................ 17

N.C. Gen. Stat. § 53-166(a) ...........................................................17, 18

N.H. Rev. Stat. § 399-A:2 ................................................................ 17

N.H. Rev. Stat. Ann. § 399-A:23(VII) .............................................. 19

N.J. Rev. Stat. § 17:11C-2-17:11C-3 ............................................... 17

N.J. Rev. Stat. §§ 17:11C-2 .............................................................. 18

N.M. Stat. § 58-15-3(D)(2)(d) ......................................................... 19

N.M. Stat. Ann. § 58-15-3 ............................................................... 17

N.Y. Banking Law § 340 ................................................................. 17

Ohio Rev. Code §1321.36 ............................................................... 17

Ohio Rev. Code Ann. § 1321.36 ...................................................... 19

Or. Rev. Stat. Ann. § 725A.020(1)(b) .............................................. 17

S. Rep. No. 111-176, at 163 (2010) ................................................... 6

S.D. Codified Law 54-4-44.1 ........................................................... 21

**Constitutional Provisions**

U.S. Const., Art. I, § 9, cl. 7 .............................................................. 4

**Other Authorities**

12 U.S.C. §§ 289-290 ........................................................................ 5

*Earnings*, *Black's Law Dictionary* (12th ed. 2024) ........................... 4

*Earnings*, *Oxford English Dictionary* (online ed. 2024) .................... 4

FTC Staff Rpt., *40 Years of Experience with the Fair Credit Reporting Act*, 2011 WL 3020575, at *21-22 (July 2011) .....................................22

Internal Revenue Service, Topic no. 404, Dividends ......................... 6

**Rules**

12 C.F.R. § 1026.4(a) ...................................................................... 10

1

12 C.F.R. § 1026.22(a)(1) ................................................................. 10

2

Fed. R. Civ. P. 12(b)(6) .................................................................... 3

3

Fed. R. Civ. P. 8(a)(2) ..................................................................... 2

4

5

**Treatises**

6

Charles Alan Wright & Arthur R. Miller, Federal Rules of Civil Procedure §
        1349 (3d ed. 2004) ................................................................ 3

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bureau's Opposition to Motion to Dismiss        Case No. 2:24-cv-04108-RGK-AJR

# INTRODUCTION

The Court should deny Defendant SoLo Funds, Inc.'s Motion to Dismiss in its entirety because the Bureau has plausibly alleged in its Amended Complaint the challenged violations of the Consumer Financial Protection Act (CFPA) and the Fair Credit Reporting Act (FCRA). In addition, SoLo's argument regarding the Bureau's funding badly misconstrues the statute and provides no basis for dismissal.

SoLo is a web- and app-based lending platform that markets itself to consumers seeking small-dollar, short-term loans. SoLo tells prospective borrowers that these loans are free of charge (*e.g.*, "0% interest" "0% APR" "no interest"). That representation is categorically false. Indeed, SoLo also markets itself to people who want to fund loan requests, telling prospective lenders that they can turn a quick profit by funding loans and collecting "tips" from borrowers. SoLo urges borrowers to tip more if they really want their loans funded, while it also prompts lenders to make counteroffers to reap higher tips. Although those tips go to the lenders, SoLo also gets its share in the form of "donations," payments that SoLo forces borrowers to make during the loan request process. SoLo never explains to borrowers that they do not have to donate, and in fact the loan process requires selecting one of the donation options—unless you are a borrower who was fortunate enough to discover the buried profile setting that must be disabled for each loan to avoid a donation.

The Consumer Financial Protection Bureau (Bureau) filed this action because SoLo is deceiving consumers in its advertising and loan documents that falsely tout no-fee, interest-free loans. In fact, these purported "tips" and "donations" are not optional or voluntary; they are a baked in, required part of the loan process, and thus SoLo should disclose them appropriately as part of the total cost of the loan. In addition, SoLo illegally services and collects on

1 | loans that are void and uncollectible in numerous states because SoLo (and
2 | its lenders) failed to follow state law and obtain the requisite licenses or
3 | because SoLo ignored state law usury limits by reframing the costs of the loan
4 | as "optional" "tips" and "donations." SoLo also gathers and shares borrowers'
5 | credit information with prospective lenders but fails to take steps to ensure
6 | the maximum possible accuracy of that information. Lastly, when loans are
7 | overdue, SoLo has repeatedly attempted to coerce payment by falsely
8 | threatening to report nonpaying borrowers to the credit bureaus even though
9 | it did not in fact report borrowers to the credit bureaus.

Contrary to the arguments made in SoLo's Motion, the Bureau's
Amended Complaint ("AC") plausibly alleges facts sufficient to support each
claim. The arguments SoLo makes in its Motion are insufficient to dismiss
any part of this suit. Importantly, SoLo's protest that it provides a lending
platform for consumers who lack better options does not mean that it gets to
ignore the law, harming the very consumers it claims to help. For all these
reasons, the Bureau respectfully requests that the Court deny Defendant's
Motion to Dismiss in full.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint present
"a short and plain statement of the claim showing that the pleader is entitled
to relief." Fed. R. Civ. P. 8(a)(2). "A complaint may be dismissed for failure to
state a claim only when it fails to state a cognizable legal theory or fails to
allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v.
Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016) (citing *Shroyer
v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010)).
Under this standard, SoLo's Motion must be denied if the Bureau has
"plead[ed] factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged." *Ashcroft v.

*Iqbal*, 556 U.S. 662, 678 (2009). This standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A motion to dismiss under Rule 12(b)(6) is not a forum in which to litigate the merits of underlying allegations." *See* Charles Alan Wright & Arthur R. Miller, Federal Rules of Civil Procedure § 1349 (3d ed. 2004). In fact, when a defendant moves to dismiss under Rule 12(b)(6), the reviewing court accepts all the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 n.1 (2002).

## ARGUMENT

### I.   The Bureau's Funding Is Valid and Provides No Basis for Dismissal.

The Bureau is funded from the Federal Reserve System's "combined earnings." 12 U.S.C. § 5497(a)(1). That means the Federal Reserve's income—not what is left of that income after paying other expenses and obligations. In an effort to find fault with the Bureau's funding despite the recent Supreme Court decision upholding it, *see CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416 (2024) (*CFSA*), SoLo insists otherwise. In SoLo's view, the statute only allows the Bureau to draw money when the Federal Reserve System has net earnings, which SoLo takes to mean whatever is left over after payment of (non-Bureau) expenses and obligations. Memorandum of Points and Authorities in Support of Defendant SoLo Funds, Inc.'s Motion to Dismiss Amended Complaint (Memo.), ECF No. 35-1 at 4. The Court should reject this claim, which relies on an atextual and unworkable reading of "earnings."

1    Courts must apply the plain meaning of a statute in the absence of
2    evidence Congress intended to depart from it. *Trim v. Reward Zone USA*
3    *LLC*, 76 F.4th 1157, 1161 (9th Cir. 2023). Earnings' ordinary meaning is
4    "revenue" or "income" generated from labor, services, or investments. *See*
5    *Earnings*, *Black's Law Dictionary* (12th ed. 2024) ("Revenue gained from
6    labor or services, from the investment of capital, or from assets."); *Earnings*,
7    *Oxford English Dictionary* (online ed. 2024) ("[T]he money made through
8    working, trade or business activity, etc."). To support its claim that
9    "earnings" really means "net earnings," SoLo relies on secondary definitions
10   in general-purpose dictionaries, which also recognize that earnings can just
11   mean income. They also point to an accounting dictionary and stock index
12   glossary. But those definitions focus on the private-company context, where
13   "earnings" can mean profits or net earnings. There is no reason to think
14   Congress meant to use "earnings" in that private-company sense here. Quite
15   the opposite: When Congress wanted to refer to "net earnings," it used that
16   term instead. *See*, *e.g.*, 12 U.S.C. §§ 289(a)(2), 290.

17   SoLo looks for support in *CFSA*, but *CFSA* does not hold (or suggest)
18   that "earnings" in 12 U.S.C. § 5497 in fact means "surplus funds" destined for
19   the Treasury. *Contra* Memo. at 4. Since the meaning of "earnings" was not at
20   issue, *CFSA* does not address it. Instead, the passage SoLo cites addresses
21   whether the Bureau's funding from the Federal Reserve even had to "comply
22   with the Appropriations Clause" given that the Clause limits only when
23   money may be "drawn from the Treasury," U.S. Const., Art. I, § 9, cl. 7. *CFSA*,
24   601 U.S. at 425. *CFSA* confirms that the Bureau's funding qualifies as money
25   from the "Treasury" because (1) the Bureau "draws money from the Federal
26   Reserve System"; and (2) "surplus funds" in the system would otherwise go to
27   Treasury. *Id.* The Supreme Court never suggests that the Bureau can only be
28   funded in periods when a surplus exists. Indeed, SoLo's attempt to read

*CFSA* that way does not square with its own view of "earnings," which they otherwise equate with the private-company sense meaning "net earnings." The "surplus funds" destined for the Treasury do not equate to private-company "earnings," because the surpluses to the Treasury are the amounts that remain *after* paying (among other things) dividends to Reserve Bank stockholders. *See* 12 U.S.C. § 289(a)(1)-(3). For private companies, "earnings" are what remains *before* dividends. Internal Revenue Service, Topic no. 404, Dividends, https://www.irs.gov/taxtopics/tc404 ("Dividends … are paid out of the earnings and profits of the corporation.").

Finally, SoLo's approach to "earnings" is inconsistent with statutory context and unworkable. Other provisions of the Dodd-Frank Act refer to "earnings" simply as income or money earned. *See*, *e.g*., 12 U.S.C. § 5390(n)(2)); 12 U.S.C. § 5465(c). And applying that definition consistently to the Bureau's funding mechanism is needed to make the statutory scheme work. When Congress created the Bureau after the 2008 financial crisis, it deemed "the assurance of adequate funding" "absolutely essential."[1] S. Rep. No. 111-176, at 163 (2010). In SoLo's telling, Congress instead funded the agency so it would be intermittently unable to oversee the financial markets, often at times of economic disruption when its work would be most needed. SoLo's answer to this problem is that the Bureau can request supplemental appropriations. *See* Memo. at 5 (citing  U.S.C. § 5497(e)). But that statutory authorization to request additional funding was meant for situations where the Bureau needs money above the cap for transfers from the Federal Reserve. *See id*. § 5497(a)(2). And under SoLo's approach, it is not clear how such supplemental appropriations would ensure adequate funding:

---

[1] SoLo notes that Congress crafted other mechanisms for the Federal Reserve System to fund the Financial Stability Oversight Counsel and Office of Financial Research. *See* Memo. at 5. But that sheds no light on the definition of "earnings" in the funding provision here.

1  Appropriations are handled annually, but the Bureau requests transfers

2  annually or quarterly, *id.* § 5497(a), and Reserve Banks remit excess earnings

3  to the Treasury weekly, *see* ECF No. 35-5 at 21. Given this mismatch in

4  timing, SoLo effectively asks the Court to audit both Federal Reserve Banks—

5  which have in fact intermittently remitted funds to the Treasury since 2022,

6  *see id.* at 61—and Bureau expenditures.

7       In any event, even if SoLo were correct, dismissal would not be

8  warranted. Congress—which has the power of the purse—has not provided

9  that actions taken without proper funding must be undone. *See generally*

10 Anti-Deficiency Act, 31 U.S.C. § 1341 *et seq*.

11 **II.    The Amended Complaint States a Claim Under the CFPA**
12 **Based on SoLo's Deceptive Advertising.**

13      Count I of the Amended Complaint alleges SoLo engaged in deceptive

14 acts or practices when it advertised that borrowers could get "no interest,"

15 "0% interest," or "0% APR" loans on its Platform but imposed fees on almost

16 all loans in violation of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B). AC ¶

17 120. "An act or practice is deceptive if: (1) 'there is a representation,

18 omission, or practice that,' (2) 'is likely to mislead consumers acting

19 reasonably under the circumstances,' and (3) 'the representation, omission,

20 or practice is material.'" *CFPB v. Gordon*, 819 F.3d 1179, 1192-93 (9th Cir.

21 2016) (applying the deceptive standard used in the FTC Act to the CFPA)

22 (citation omitted). "Deception may be found based on the 'net impression'

23 created by a representation." *Id.*

24      SoLo essentially makes two arguments in seeking dismissal of Count I:

25 (1) that the Bureau has "no facts" in support of "speculation about what

26 consumers believed," Memo. at 7; and (2) that the advertising statements are

27 true, Memo. at 6-10. Neither of these arguments support dismissal.

28

1    SoLo's first argument is both inappropriate at the motion to dismiss

2    stage, and also misconstrues the law. The Bureau is not required to allege

3    that consumers were actually deceived in order to show SoLo's practices were

4    deceptive. Rather, the standard is whether consumers are *likely to be misled*.

5    *See Gordon*, 819 F.3d at 1192-93*; cf. FTC v. Gill*, 71 F. Supp. 2d 1030, 1045-

6    46 (C.D. Cal. 1999) (explaining meaning of "likely to mislead," under FTC

7    Act, and citing cases), *aff'd* 265 F.3d 944 (9th Cir. 2001); *FTC v. DeVry Educ.*

8    *Grp., Inc.*, No. CV-16-00579-MWF-SSx, 2016 WL 6821112, at *5 (C.D. Cal.

9    May 9, 2016) (denying motion to dismiss misleading advertising claim). SoLo

10   also appears to argue that whether its advertisements are misleading is

11   immaterial because consumers later learn the terms on which they can

12   actually obtain a loan.[2] But it cites no authority to support its ability to bait-

13   and-switch consumers without violating the law.[3]

14   Regardless, the Amended Complaint does plausibly allege that the "net

15   impression" of SoLo's advertising statements was misleading to consumers.

16

17   [2] To be clear, SoLo borrowers are never informed of the applicable interest

18   rate or APR, which are essential for comparing costs of credit. *See*, *e.g.*, 15
     U.S.C. § 1601(a) (purpose of credit term disclosure is to ensure consumers

19   will be able to "compare more readily the various credit terms available to
     [them].")

20

21   [3] SoLo argues that its advertisements are not an "unconditional promise" for
     specific loan terms. Memo. at 7. But the Bureau does not allege that SoLo

22   made any "unconditional promise[s]," nor is such an allegation an element of
     a deception claim under the CFPA. In any event, the lack of an unequivocal

23   promise does not preclude deception. *See Gill*, 71 F. Supp. 2d at 1044 ("the
     lack of guarantee does not negate the misrepresentations" when a guarantee

24   was "implied in the text"); *see also DeVry*, 2016 WL 6821112, at *5 (denying
     motion to dismiss where advertisements "at least plausibly create[d]" a

25   misleading impression). SoLo also contends that "0% interest" and "0% APR"
     do not "plausibly create an impression that there would be no other financial

26   terms" or that the "loans were free." Memo. at 7. Again, that is not the
     Bureau's allegation; it alleged that SoLo's advertisements gave the misleading

27   net impression that the loans obtained on SoLo's platform were "fee-free"—
     meaning free of additional fees or costs—and that the interest rate or APR

28   would be 0%. AC ¶ 118.

*See* AC ¶¶ 36-39. These representations gave the misleading impression that the loans consumers obtained through SoLo's platform were free of charge when, in fact, SoLo loans almost uniformly required a lender tip fee, a SoLo donation fee, or both to be funded—fees that should be included in the total cost of the loan. *See* AC ¶¶ 36-41, 117-118. *See FTC v. LendingClub Corp.*, No. 18-CV-02454-JSC, 2018 WL 11436309, at *8 (N.D. Cal. Oct. 3, 2018) (denying motion to dismiss deception claims and finding complaint plausibly alleged defendant's "no hidden fees" representation was likely to mislead a reasonable consumer). As in *LendingClub*, the allegations here "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

Solo's other arguments rely on its position that the ads were true, either because (1) it claims the tips and donations were, in fact, optional and not considered "interest" or otherwise factored into the APR; and (2) some loans were obtained without paying tips and donations. Memo. at 7-10. But the Bureau has sufficiently alleged that the "tips" and "donations" collected from borrowers on the SoLo Platform are not voluntary or optional, AC ¶ 123, and should be included in the calculations of interest and APR that SoLo advertises. 12 C.F.R. §§ 1026.22(a)(1) (determining APR, a measure of the cost of credit), 1026.4(a) (broadly defining finance charge); *see also* 15 U.S.C. § 1605(a) (defining finance charge). AC ¶123b. The Bureau pleaded several facts in support of this position, including:

(1) SoLo requires a prospective borrower to designate a lender tip *before* a lender even considers the loan for funding. AC ¶¶ 29-30, 43. The fee is designed to entice a lender to fund the loan—it is not an after-the-fact gratuity.

(2) Considering 99.5% of funded SoLo loans include a tip fee, it is plausibly a prerequisite (or condition) for funding. AC ¶¶ 29, 32.

1    (3) Lender counteroffers for tip amounts become a condition of the

2    loan or the borrower must decline. AC ¶¶ 30-31.

3    (4) SoLo designed its Platform to ensure borrowers pay donations to

4    SoLo as well. A borrower attempting to request a loan is presented

5    with three options to donate to SoLo: 7%, 8%, or 9% (currently). AC ¶

6    45. The page has no option for "0%" or "no donation", and a borrower

7    cannot continue to complete the loan application without selecting an

8    amount (unless it is aware of, finds, and disables a "no donation"

9    feature hidden on a different page in profile settings). AC ¶¶ 43-50.

10   (5) SoLo itself referred to the "tips" as an interest rate on the loan. AC

11   ¶ 42.

12       Finally, SoLo argues, even if the fees were not optional, a small

13   percentage of loans had neither a tip nor a donation. The fact that an

14   exceedingly small percentage of loans were funded without tips or donations

15   does not erase the Bureau's plausible allegations that SoLo's advertisements

16   were deceptive for the vast majority of consumer borrowers. *FTC v.*

17   *Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (not requiring a showing that

18   all consumers were deceived to state a claim for deception) (citing *FTC v.*

19   *Figgie Int'l, Inc.*, 994 F.2d 595, 605-06 (9th Cir. 1993)). As pleaded in the

20   Amended Complaint, a significant majority of consumers were likely to be

21   misled, as all potential borrowers could view SoLo's deceptive statements, yet

22   only one-half of one percent of loans were funded without a lender tip. AC ¶

23   32. Moreover, consumer reliance on "literally true" but "misleading"

24   statements can be reasonable. *Kraft, Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir.

25   1992). And advertisements and statements that are "capable of being

26   interpreted in a misleading way should be construed against the

27   [defendants]." *See Gill*, 71 F. Supp. 2d at 1045 (quoting *Resort Car Rental*

28   *Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975)).

9

1    Accordingly, the Court should deny SoLo's motion to dismiss Count I's

2  deceptive advertising claim.

3  **III.    The Amended Complaint States a Claim Under the CFPA**
**Based on SoLo's Deceptive Disclosures.**

4

5    Count II of the Amended Complaint plausibly alleges that SoLo made

6  deceptive statements within its disclosure documents and promissory note in

7  violation of the CFPA, including that the tip and donation "shall not be

8  construed as a requirement … of the Note or the Loan," the "cost of credit is

9  0%," "the finance charge is $0," and "no amounts [are] paid to others on the

10  consumer's behalf." AC ¶ 122. These statements were likely to mislead

11  consumers acting reasonably under the circumstances and were material.

12  *Gordon*, 819 F.3d at 1192–93.

13    First, the Amended Complaint plausibly alleges multiple deceptive

14  statements. SoLo wrote in fine-print documents to consumers that donations

15  and tips should not be construed as a requirement or a condition of the loan,

16  *id*. at ¶ 122b, and yet, as addressed above, those fees were required to be paid

17  on the repayment date as a condition of the loan. *Id*. at ¶ 123b. SoLo also told

18  consumers that it would debit from their accounts "the principal loan amount

19  on the repayment date and any other charges, costs, and expenses." AC ¶ 122.

20  SoLo excluded "tips" and "donations" from that description but included

21  those fees when debiting customers' accounts along with the principal loan

22  amount. *Id*. at ¶ 123. SoLo informed consumers that the cost of credit was 0%

23  and the finance charge on the loans was $0. *Id*. at ¶ 122c, 122d. But, for any

24  consumer paying tips or donations, those statements were false. *Id*. at ¶ 123c,

25  123d. And finally, SoLo told consumers that no amounts would be paid to

26  others on the consumer's behalf, *id*. at ¶ 122e; however, SoLo debited

27  consumers' accounts to pay the lenders and to pay itself. *Id*. at ¶ 123e. These

28  statements were patently false.

1   Second, the Bureau has plausibly alleged that SoLo's multiple deceptive
2   statements were likely to mislead consumers acting reasonably under the
3   circumstances and were material. As courts in the Ninth Circuit have
4   recognized, an express, false representation is presumed to be material and is
5   likely to mislead consumers. *CFPB v. Chou Team Realty LLC*, No. 8:20-CV-
6   00043-SB-ADS, 2021 WL 4077110, at *4 (C.D. Cal. Aug. 10, 2021), *aff'd sub*
7   *nom. CFPB v. Nesheiwat*, No. 21-56052, 2022 WL 17958636 at *1 (9th Cir.
8   Dec. 27, 2022); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095-96 (9th Cir.
9   1994); *see also FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d
10  1052, 1067 (C.D. Cal. 2012); *United States v. MyLife.com, Inc.*, 567 F. Supp.
11  3d 1152, 1164 (C.D. Cal. 2021). Here, the facts as pleaded support the
12  plausibility that consumers acting reasonably under the circumstances could
13  be misled.
14   SoLo's Motion, again, improperly attacks the merits of the Amended
15  Complaint—not the sufficiency or plausibility of the allegations. The
16  misleading representations in SoLo's disclosures are also not cured by other
17  language in the promissory note. SoLo cannot use a set of buried statements
18  to cure prominent, touted misrepresentations made elsewhere—particularly
19  on documents intended to clarify the terms of a loan. *See*, *e.g.*, *FTC v.*
20  *Medlab*, *Inc.*, 615 F. Supp. 2d 1068, 1077 (N.D. Cal. 2009) ("Defendants
21  cannot inoculate themselves from the representations that appear in the body
22  of the text by including these cautionary statements at the foot of the
23  advertisements.").

## IV. The Amended Complaint States a Claim Under the CFPA for SoLo's Unfair, Deceptive, and Abusive Servicing and Collection of Loans.

Counts IV, V, and VI of the Amended Complaint allege that SoLo
serviced and collected (or attempted to collect) payments from consumers on

BUREAU'S OPPOSITION TO MOTION TO DISMISS       Case No. 2:24-cv-04108-RGK-AJR

loans that were void and uncollectible under the laws of several states.[4] To protect consumers and regulate consumer lending activities, many states require that lenders, those in the business of lending, or anyone involved in certain covered activities obtain a license to do business with consumers in that state. "Lending without a license in these states renders the loan contract void and/or relieves the borrower of the obligation to pay certain charges." *CFPB v. CashCall, Inc.*, No. CV 15-7522-JFW (RAOx), 2016 WL 4820635, at *9 (C.D. Cal. Aug. 31, 2016). Additionally, several states have usury laws to limit interest rates. A violation of these usury laws similarly renders the loans void and uncollectible, in whole or in part. *Id.*

Here, the Bureau's allegations of unfair, deceptive, and abusive acts or practices (UDAAPs) are based on SoLo's servicing and collecting on loans made in violation of such state licensing and usury laws. The Ninth Circuit has unambiguously held that the servicing and collection of loans void under state law is a deceptive act or practice. *CFPB v. CashCall, Inc.*, 35 F.4th 734, 747 (9th Cir. 2022) ("CashCall led borrowers to believe that they had an obligation to pay, when in fact under their States' laws they did not. That is the deceptive act pursued by the Bureau, and it falls within the prohibition of the statute."); *see also CFPB v. Think Finance, LLC*, No. CV-17-127-GF-BMM, 2018 WL 3707911, at *7-8 (D. Mont. Aug. 3, 2018) (allegations that defendant informed consumers, impliedly and explicitly, that they possessed a legal obligation to pay on void loans stated claim for unfair, deceptive, and abusive acts or practices); *CFPB v. NDG Fin. Corp.*, No. 15-cv-5211 (CM), 2016 WL 7188792, at *11-15 (S.D.N.Y. Dec. 2, 2016) (same).

---

[4] Other than the challenge to Counts IV (deceptiveness) and VI (abusiveness) based on whether the loans were void and uncollectible, SoLo does not argue that Counts IV and VI fail to state a deceptiveness or an abusiveness claim under the CFPA.

1   SoLo mischaracterizes Counts IV-VI as alleging a failure to disclose a

2   potential legal defense to loan enforceability. Memo. at 13-14. That argument

3   conflicts with binding Ninth Circuit law under *CashCall*, 35 F.4th at 747,

4   because leading borrowers to believe that they had an obligation to pay when

5   they did not is a deceptive act. SoLo made express representations in its loan

6   documents that consumers had an obligation to repay loans void under state

7   laws, sent collection emails and texts demanding payment, debited money

8   from consumers' bank accounts through ACH transactions, and threatened to

9   report nonpayment to credit bureaus. AC ¶¶ 55, 84-92, 132-35. As alleged,

10  SoLo's actions state plausible claims for UDAAPs under the CFPA.

11  Furthermore, these allegations are substantively distinct from the case SoLo

12  cited, *Woodward v. Collection Consultants of California,* 381 F. Supp. 3d

13  1234, 1236-38 (C.D. Cal. 2019). There, the court found that communications

14  regarding *valid* debts, although time-barred by the time of collection, did not

15  run afoul of the FDCPA; whereas here, the loans were never valid.

16   **A. The Amended Complaint plausibly alleges that SoLo**

17        **loans are void and uncollectible due to SoLo and its**

18        **lenders' unlicensed activity in violation of the laws in**

19        **the Subject States.[5]**

20   The Amended Complaint plausibly alleges that SoLo was required to

21  obtain licenses in certain states but did not. SoLo has not shown that any of

22  these laws do not apply to it as a matter of law. First, although the statutory

23  language varies from state to state, the Amended Complaint includes

24  sufficient and plausible allegations of SoLo's assorted activities that subject it

25  to the licensing requirements in the Subject States. SoLo "advertises" to

26  procure loans, and then "arranges," "finds," "obtains," "negotiates,"

27  "brokers," "facilitates," or "procures" loans on borrowers' behalf by recruiting

28

---

[5] The list of Subject States is defined in AC ¶¶ 96, 100, 105.

lenders and establishing a loan request process, counteroffer, and acceptance process, and then "services" those loans by debiting borrower accounts and collecting on unpaid loans. AC ¶¶ 36-42, 25-27, 43-49, 55-56, 82-92.[6] SoLo is also in the "business of lending" or "making loans" to consumers by endorsing or furnishing guarantees of loans, taking assignment of loans, funding loans, and taking payment of principal, tips, and donations. AC ¶¶ 70-72.[7] The Amended Complaint alleges that SoLo has engaged in these statutorily covered activities without a license in the Subject States making the loans void and uncollectible. AC ¶¶ 69, 79, 105.

Second, contrary to SoLo's downplaying of the significance of its lending activities, *see* Memo. at 15, the Amended Complaint plausibly alleges that it engages in the business of lending or making loans because, for at least some loans, SoLo guarantees the repayment of principal to the lender upfront, bears the risk of loss of those loans, takes assignment of those loans, and provides credits for future loans. Business of lending or consumer loan business can include "endorsing or otherwise securing" loans, N.C. Gen. Stat. § 53-166(a), or "furnishing, or procuring guarantee" of loans, N.J. Rev. Stat. §§ 17:11C-2. This is because the party that guarantees and takes assignment of loans (and provides funding for loans), though obscured through by the insertion of third parties on the notes, can be the lender.[8]

---

[6] *See* Ariz. Rev. Stat. Ann. § 6-601(5); Conn. Gen. Stat. Ann. §§ 36a-556(a)(2)-(3); Idaho Stat. §28-46-402; 815 Ill. Comp. Stat. § 122/1-10; Md. Code Ann., Com. Law § 14-1901; Mass. Gen. Laws ch. 140, §§ 96, 110; N.C. Gen. Stat. § 53-166(a) (after Oct. 1, 2023); N.H. Rev. Stat. § 399-A:2; N.J. Rev. Stat. § 17:11C-2-17:11C-3; Ohio Rev. Code §1321.36; Or. Rev. Stat. Ann. § 725A.020(1)(b).

[7] *See* Ala. Code § 5-18-4; N.M. Stat. Ann. § 58-15-3; N.Y. Banking Law § 340; N.C. Gen. Stat. § 53-166(a) (prior to Oct. 1, 2023).

[8] *Cf. United States v. Grote*, 961 F.3d 105, 111 (2d Cir. 2020) (citing multiple "fronts" to avoid detection of role as lender, including bearing entire loss for unpaid loans); *District of Columbia v. Elevate Credit, Inc.*, 554 F. Supp. 3d

---

BUREAU'S OPPOSITION TO MOTION TO DISMISS          Case No. 2:24-cv-04108-RGK-AJR

1    SoLo's specific references to Alabama, New Mexico, and New York's

2  licensing requirements fare no better than its generic argument.[9] Although

3  the term "business of lending" is not defined in either Alabama or New

4  Mexico's respective statutes, both statutes prohibit evading the licensing

5  requirement by "any device, subterfuge or pretense whatsoever" including

6  "the real or pretended negotiation, arrangement or procurement of a loan

7  through any use or activity of a third person, whether real or fictitious." *See*

8  Ala. Code § 5-18-4, N.M. Stat. § 58-15-3(D)(2)(d). This anti-evasion language

9  is broad and extends to an arrangement like the SoLo Platform, intentionally

10  structured to evade regulatory oversight. *See*, *e.g.*, *Austin v. Ala. Check*

11  *Cashers Ass'n*, 936 So.2d 1014, 1034-35 (Ala. 2005) (anti-evasion language

12  applies to *any* "subterfuges" or "evasions" used to attempt to avoid the

13  protections afforded consumers under the Act). With respect to New York,

14  the Bureau has plausibly alleged that SoLo has solicited New York consumers

15  through advertisements and made loans to those consumers through

16  assigned loans to SoLo. AC ¶¶ 72a-d, 79, 81, 105k.[10] Because SoLo undertook

17  multiple roles creating and monetizing an entire consumer lending business

18  as an unlicensed person, the resulting SoLo Platform loans are void, and no

19

20

21

22  125, 138-39 (D.D.C. 2021) (describing sufficient allegations of role as lender including "tak[ing] the risk of bad loans, including by providing credit

23  protections.").

24  [9] SoLo also cites 205 Ill. Comp. Stat. § 670/1, but the Amended Complaint alleges SoLo failed to obtain a payday lending license under a different

25  provision, 815 Ill. Comp. Stat. §§ 122/1-10, *see* AC ¶ 105e, which includes someone who "arranges a payday loan for a third party" in the definition of

26  "lender."

27  [10] *Cf. People v. Debt Resolve, Inc.*, 387 F. Supp. 3d 358, 367-69 (S.D.N.Y. 2019) (denying motion to dismiss New York banking law violations despite

28  defendants getting loans through assignments and not directly providing initial funds).

1  one should have the right to collect the principal, finance charges, or other

2  fees from these null and void loans.[11]

3      Third, the Bureau has plausibly alleged that some SoLo Platform loans

4  are also void and uncollectible because six of the Subject States' laws likely

5  required SoLo's high-volume lenders, including its so-called "power

6  lenders"—to have a license. AC ¶¶ 72e, 80-81. The Amended Complaint

7  specifically alleges that these unlicensed lenders "regularly engaged in

8  lending," including making 25 or more loans on SoLo's Platform.[12] AC ¶ 81.

9  Because this subset of lenders failed to obtain licenses, SoLo's servicing and

10 collections activities (and material omissions concerning enforceability) of

11 void loans are plausibly unfair, deceptive, or abusive acts or practices.

12
13 **B. The Amended Complaint plausibly alleges that SoLo
   loans are void and uncollectible due to SoLo's usurious
14   fees in violation of the laws in the Subject States.**

15     SoLo argues that the Bureau has not stated UDAAP claims under the

16 CFPA because the tips and donations are optional and thus not included in

17 the interest rate or APR calculations that determine whether the SoLo loans

18 are usurious. However, the Amended Complaint plausibly alleges that the

19 tips and donations, included with almost 100% of SoLo's loans, are

20 mandatory and exceed state-law definitions of interest or annual rate of

21 interest. AC ¶¶ 29-32, 43-50, 99; *see supra* at Section II. SoLo attempts to

---

22
23 [11] *See, e.g.*, N.H. Rev. Stat. Ann. § 399-A:23(VII) (2024) (Any person who
   fails to obtain license "shall have no right to collect, receive, or retain any
24   principal, interest, or charges" and "contract shall be null and void."); Ohio
   Rev. Code Ann. § 1321.36(C) (West 2023) ("Any loan made in violation of this
25   section is void, and the lender has no right to collect, receive, or retain any
   principal, interest, fees, or other charges in connection with the loan.")

26 [12] The Amended Complaint alleges that SoLo facilitated loans by high-volume
27   lenders from March 2018 to at least December 2022. SoLo mischaracterizes
   that allegation as stating a total number of 25 loans across that span of years
28   instead of 25 or more loans made in an individual year during that time. *Cf.*
   AC ¶ 81 *with* Memo. at 17-18.

1  ignore those well-pleaded allegations by pointing to an "authoritative

2  interpretation" regarding "optional fees" that SoLo claims renders the

3  Bureau's allegations "inaccurate" on their face.[13] Regardless of SoLo's

4  characterization of these mandatory fees, the Bureau's allegations that the tip

5  amount is input prior to loan funding approval and that 99.5% of loans

6  originated on the SoLo Platform include tips, AC ¶¶ 29-32, provide a

7  plausible basis to allege that tips are required for SoLo loans to actually get

8  funded. In addition, for loans obtained following a counter-offer, the lender

9  tip fee is a negotiated term and certainly required.[14] AC ¶¶ 30-31. And finally,

10  selecting (and paying) one of the three default options for a donation is a

11  required part of the SoLo loan request process (the buried "no donation"

12  profile setting notwithstanding). AC ¶¶ 44-50.

13         Equally relevant, the respective usury laws in these States not only look

14  at whether the fees are mandatory but also at whether a defendant structured

15  the fees in an attempt to evade the usury limitation.[15] Here, SoLo has failed to

16  identify grounds to dismiss plausible allegations that SoLo concocted a

17

---

18  [13] The Court need not even consider a comment letter, for which SoLo seeks judicial notice, as it has no bearing on the plausibility of the Bureau's

19  asserted claims. ECF Nos. 35-14, 35-11. But even on its own terms, the

20  comment letter emphasizes that obligatory fees, like SoLo's, are finance charges, *see* ECF No. 35-11 at 10, and reaffirms that existing federal

21  consumer financial law prohibits deceptive conduct like SoLo's. *Id.* at 13 n.14.

22  [14] In contrast to tips for service at sit-down restaurants, SoLo's pre-loan tip negotiation process makes the loan contingent on the Lender's acceptance of

23  a tip or the Borrower's acceptance of a counteroffer.

24  [15] *See*, *e.g.*, S.D. Codified Law 54-4-44.1 (prohibiting "device, subterfuge, or pretense" to evade usury limitation, including arranging for debtor to obtain

25  a loan with interest in excess of usury limitation); *In the Matter of Dollar Loan Center of South Dakota, LLC*, Order No. 2017-2 (S.D. Div. of Banking

26  Sept. 13, 2017) (short term lender could not recharacterize anticipated fees as "late fees" to exclude them from finance charge calculation and evade state

27  usury limit); *McGhee v. Arkansas State Bd. of Collection Agencies*, 375 Ark. 52, 60–62, 289 S.W.3d 18, 25–26 (2008) (fees paid to check-casher were

28  owed to lender for borrowing money and therefore interest).

1  lending platform that evades usury limits by mischaracterizing the costs of
2  loans as "tips" and "donations."

### C. The Amended Complaint plausibly alleges SoLo violated the CFPA by unfairly collecting amounts consumers did not owe with no countervailing benefits.

6      Count V of the Amended Complaint plausibly alleges that SoLo unfairly
7  collected amounts that consumers did not owe. An act or practice is unfair in
8  violation of the CFPA if it (1) causes or is likely to cause substantial injury to
9  consumers, (2) which is not reasonably avoidable by consumers, and (3) such
10 substantial injury is not outweighed by countervailing benefits to consumers
11 or to competition. *See* 12 U.S.C. § 5531(c)(1). SoLo's collection of amounts
12 purportedly owed based on void loans originated on the SoLo Platform was
13 an unfair act or practice in violation of the CFPA. SoLo argues that the
14 Amended Complaint does not plausibly allege the substantial injury to
15 consumers from Count V's unfairness claim is not outweighed by
16 countervailing benefits. Memo. at 18. The Court should reject SoLo's
17 argument.

18      First, SoLo's argument about countervailing benefits goes to the merits
19 and is inappropriate in a motion to dismiss. *See Think Finance, LLC*, 2018
20 WL 3707911 at *8 (defendants' arguments concerning quantification of
21 benefits of financial products should be raised at merits stage of litigation).
22 The Amended Complaint plausibly alleges the substantial harm to consumers
23 and the lack of countervailing benefits. SoLo's alleged countervailing
24 "benefits" do not have to be accepted as true and certainly should not receive
25 greater weight than the Bureau's factual allegations, which are accepted as
26 true on a motion to dismiss.

27      In any event, SoLo collecting on void loans provides no benefit to
28 consumers. *See NDG Fin. Corp.*, 2016 WL 7188792, at *13 ("[l]osing money

---

BUREAU'S OPPOSITION TO MOTION TO DISMISS        Case No. 2:24-cv-04108-RGK-AJR

1  they are otherwise entitled to keep provides consumers no conceivable

2  benefit"). And lending operations like the SoLo Platform harm competition

3  because lenders who comply with state and federal law—and thus incur

4  additional costs for licensing and compliance and charge non-usurious rates

5  to consumers—are at a tremendous economic disadvantage.

6       Second, SoLo tries to incorporate irrelevant material that was not

7  referenced in the Complaint or Amended Complaint and that has no bearing

8  on the plausibility of the Bureau's claim at this stage. ECF Nos. 35-14, 35-8 to

9  35-10. *See Gerstenhaber v. Client Res. Grp., Inc.*, No. 8:19-CV-02004-JLS-

10  ADS, 2020 WL 3883281, at *2 (C.D. Cal. June 19, 2020) (denying requests

11  for judicial notice because court did "not find the contents of those

12  documents necessary" to resolve the motion) (citing *Adriana Intern. Corp. v.*

13  *Thoeren*, 913 F.2d 1406, 1410 n. 2 (9th Cir. 1990) ("if an exhibit is irrelevant

14  or unnecessary to deciding the matters at issue, a request for judicial notice

15  may be denied"). In deciding this Motion, the Court need not take judicial

16  notice of SoLo's irrelevant attachments concerning CFPB public statements

17  about payday loans.

18  **V.    The Amended Complaint States a Claim Under the Fair Credit**
19  **Reporting Act Because SoLo Is a Consumer Reporting**
        **Agency.**

20       The Amended Complaint plausibly alleges that SoLo is a consumer

21  reporting agency (CRA) because it "assembles or evaluates the consumer

22  information for monetary fees in the form of SoLo donation fees, or

23  alternatively, . . . . on a 'cooperative nonprofit basis' by facilitating the mutual

24  exchange of loan repayment and other consumer information to and from

25  lenders." AC ¶ 20, *quoting* 15 U.S.C. § 1681a(f). Arguing that FCRA is

26  "inapplicable," SoLo says it does not assemble or evaluate consumer

27  information "'for monetary fees, dues, or on a cooperative nonprofit basis.'"

28

1  Memo. at 20, *quoting* 15 U.S.C. § 1681a(f). But the allegations show sufficient
2  facts, which if accepted as true, plausibly state a claim for relief.

3      The Amended Complaint alleges SoLo "assembles or evaluates the
4  consumer information for monetary fees in the form of SoLo donation fees."
5  AC ¶ 20. The SoLo Score is an "in app credit score" or "social credit score"
6  that SoLo assembles from information gathered from third parties alongside
7  a statement listing the number of repaid SoLo Platform loans. AC ¶¶ 61, 63-
8  64. According to the Amended Complaint, there is only one payment source
9  that SoLo receives upfront when the lender funds the loan—the donation
10 fee—which SoLo retains regardless of whether the borrower ever repays the
11 loan and fees. AC ¶¶ 45-46, 51. Even if that bundled fee covers other costs
12 (*e.g.*, identity verification, payment processing), the Amended Complaint
13 plausibly alleges that providing the SoLo Score is an integral part of SoLo's
14 services for which lenders and borrowers compensate it.

15     FCRA does not require that the "monetary fee" be solely for the
16 provision of the consumer report. Although a CRA may be an entity that
17 "regularly engages in whole *or in part*" in assembling or evaluating consumer
18 information for purposes of sharing with third parties, bundled fees could
19 pay for additional functions, such as hosting the lending platform. 15 U.S.C. §
20 1681a(f) (emphasis added). SoLo also argues that the donation is not a
21 monetary fee for furnishing consumer reports to third parties because
22 payment of the "donation" fee occurs through loan funding and is not made
23 in every instance. Memo. at 20. But neither the payment timing (during
24 funding rather than prior to loan review), nor the method of charging a fee
25 (selected by borrower rather than lender), change the totality of
26 circumstances. *See Abdallah v. LexisNexis Risk Sols. FL Inc.*, No. 19-CV-
27 3609 (RRM) (VMS), 2021 WL 1209419, at *6 (E.D.N.Y. Mar. 30, 2021) ("In
28 determining whether an entity is a consumer reporting agency, a court must

1  look to the totality of circumstances—in particular, to the actual activities of

2  the company—to determine whether it regularly assembles information for

3  the purpose of regularly furnishing consumer reports to third parties.")

4  (citations and quotation marks omitted). The Bureau is also entitled to a

5  reasonable inference in its favor that the "donation" payment SoLo receives

6  from borrowers (through lenders) is (1) the only method by which SoLo is

7  paid for facilitating or brokering the loans, and (2) at least "in part" in

8  exchange for the SoLo Score assembly and related loan repayment

9  information provided.

10  Neither case cited in SoLo's Motion to Dismiss supports SoLo's

11  argument that it did not receive monetary payments for consumer reports or

12  that SoLo's consumer report furnishing did not function on a cooperative

13  nonprofit basis. In the cases SoLo cited, courts found that, despite receiving

14  payments from third parties, the defendants did not generate "consumer

15  reports" when furnishing online search engine results or a hospital's reports

16  of its experiences with patients. *Sandofsky v. Google LLC*, No. 21-10052,

17  2021 WL 2941128, at *4 (D. Mass. July 13, 2021), *aff'd*, No. 21-1628, 2023

18  WL 9785578 (1st Cir. Sept. 6, 2023); *Tierney v. Advoc. Health & Hosps.*

19  *Corp.*, 797 F.3d 449, 453 (7th Cir. 2015). Here, SoLo does not dispute that the

20  SoLo Score it furnishes to assist prospective lenders would constitute a

21  "consumer[ ] report" intended to "bear[ ] on a consumer's creditworthiness." 15

22  U.S.C. § 1681a(d)(1) (defining "consumer report")

23  The Bureau also plausibly alleged, alternatively, if the donation fee does

24  not constitute a "monetary fee" for the consumer report services, SoLo

25  qualifies as a CRA because it operates on a "cooperative nonprofit basis." 15

26  U.S.C. § 1681a(f). As the FTC describes: "[e]ntities that work together for a

27  common purpose without monetary compensation may form a CRA," such as

28  entities which "establish a mechanism through which each member can (1)

21

provide the identities and loan amounts of their borrowers, and (2) receive information on the outstanding loans of its applicants. Because such [entities] operate on a cooperative nonprofit basis, they are CRAs." FTC Staff Rpt., *40 Years of Experience with the Fair Credit Reporting Act*, 2011 WL 3020575, at *21-22 (July 2011) (emphasizing what matters is the "basis" on which the entities operate, not any registration as a cooperative or non-profit for business purposes). As alleged, SoLo not only provides the SoLo Score to the lenders and borrowers, but those lenders and borrowers in turn share loan repayment information with SoLo. AC ¶ 20. As a result, the Bureau has provided sufficient, plausible allegations that SoLo is subject to the FCRA as a CRA.

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1

The undersigned counsel of record for Plaintiff Consumer Financial Protection Bureau certifies that this opposition brief contains 6,952 words, which complies with the page and word limits set forth in the Court's order dated September 3, 2024 (ECF No. 34).

Dated: September 16, 2024          /s/  Bradley H. Cohen

Bradley H. Cohen
*Attorney for Plaintiff*
*Consumer Financial Protection*
*Bureau*

# CERTIFICATE OF SERVICE

Undersigned counsel certifies that the foregoing pleading was electronically filed with the Clerk of the Court for the United States District Court for the Central District of California by using the CM/ECF system on September 16, 2024. I further certify that all participants in the case are registered CM/ECF users and that service was accomplished through the CM/ECF system.


Dated: September 16, 2024         /s/   Bradley H. Cohen

Bradley H. Cohen
*Attorney for Plaintiff*
*Consumer Financial Protection*
*Bureau*