LEVI W. SWANK (admitted *pro hac vice*)
LSwank@goodwinlaw.com
**GOODWIN PROCTER LLP**
1900 N Street, NW
Washington, DC  20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444

LAURA A. STOLL (SBN 255023)
LStoll@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, 41st Floor
Los Angeles, CA  90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

Attorneys for Defendant
SOLO FUNDS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>SOLO FUNDS, INC.,<br><br>Defendant. | Case No. 2:24-cv-04108-RGK-AJR<br><br>***Discovery Matter***<br><br>**DEFENDANT SOLO FUNDS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES FROM PLAINTIFF CONSUMER FINANCIAL PROTECTION BUREAU**<br><br>Date:    TBD<br>Time:<br>Ctrm:   780 (7th Fl.)<br>Magistrate: Hon. A. Joel Richlin<br>                 Roybal Federal Building<br>                 255 East Temple Street<br>                 Los Angeles, CA 90012<br>Complaint filed:  May 17, 2024 |

# TABLE OF CONTENTS

Page

I. The Court Should Compel the Bureau to Search For Documents Concerning the Short-Term Small-Dollar Credit Market and Loan Costs (DRs 40-46). ................................................................ 3

II. The Court Should Compel the Bureau to Search For and Provide Exculpatory Information Concerning SoLo Funds (DR 5; ROG 21). ............... 7

III. The Court Should Compel the Bureau to Search for Non-Public Documents and Communication152313s Relevant to How Consumers Understand the Statements the Bureau Believes Are Misleading (DRs 26, 27, 29) ..................................................................... 9

IV. The Court Should Compel the Bureau to Provide Discovery Responses Concerning What State Officials Told the Bureau About SoLo and Its Compliance With State Licensure and/or Usury Laws. (DR 34; ROG 10) ............................................................... 12

    A. The Common Interest Privilege Does Not Apply. .................... 13

    B. The Deliberative Process Does Not Apply and/or Is Overridden by SoLo's Substantial Need for This Information. .................... 15

    C. The Law Enforcement Privilege Does Not Apply and/or Is Overridden By SoLo's Substantial Need for This Information. ............... 16

    D. Communications From Third-Party State Officials Are Not the Bureau's Protected Work Product. .................................... 18

V. The Court Should Compel the Bureau to Provide Information Concerning the Basis For Its Contentions That SoLo Violated State Usury Limitations and Licensing Requirements (DR 35; ROG 4). ........ 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*,
   881 F.2d 1486 (9th Cir. 1989) ................................................................ 18, 19

*Al Otro Lado, Inc. v. Wolf*,
   No. 17-2366, 2020 WL 3487823 (S.D. Cal. June 26, 2020) ........................... 17

*Am. Fin. Servs. Ass'n v. FTC*,
   767 F.2d 957 (D.C. Cir. 1985) ........................................................................ 5

*CFPB v. Gordon*,
   819 F.3d 1179 (9th Cir. 2016) ...................................................................... 10

*CFPB v. Navient*,
   No. 17-101, Dkt. No. 88 (M.D. Pa. May 4, 2018) ............................................ 8

*Chevron Corp. v. Pennzoil Co.*,
   974 F.2d 1156 (9th Cir. 1992) ...................................................................... 20

*Consumer Fin. Prot. Bureau v. Brown*,
   69 F.4th 1321 (11th Cir. 2023) ........................................................................ 8

*Consumer Fin. Prot. Bureau v. NDG Fin. Corp.*,
   No. 15-5211, 2016 WL 7188792 (S.D.N.Y. Dec. 2, 2016) ................................ 5

*Davis v. Rumsey Hall Sch., Inc.*,
   No. 20-01822, 2023 WL 4417549 (D. Conn. July 10, 2023) ........................... 18

*FTC v. J.K. Publications, Inc.*,
   99 F. Supp. 2d 1176 (C.D. Cal. 2000) ............................................................. 6

*FTC v. Walmart Inc.*,
   664 F. Supp. 3d 808 (N.D. Ill. 2023) ............................................................... 4

*FTC v. Windward Marketing, Ltd.*,
   No. 96-615, 1997 U.S. Dist. LEXIS 17114 (N.D. Ga. Sept. 16,
   2008) .............................................................................................................. 5

*Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*,
   959 F.2d 1158 (2d Cir. 1992) ........................................................................ 18

*Hereford v. City of Hemet*,
   No. 22-00394, 2023 WL 6813740 (C.D. Cal. Sept. 14, 2023) .................. 16, 18

*In re New Century*,
   No. 07-0931, 2009 WL 10691336 (C.D. Cal. Dec. 7, 2009) ........................... 18

*Nidec Corp. v. Victor Co. of Japan*,
   249 F.R.D. 575 (N.D. Cal. 2007) ....................................................................... 15

*Novoa v. Geo Grp., Inc.*,
   No. 17-02514, 2020 WL 6694317 (C.D. Cal. Oct. 8, 2020) ............................. 16

*In re Pac. Pictures Corp.*,
   679 F.3d 1121 (9th Cir. 2012) ........................................................................... 13

*Regents of Univ. of Calif. v. Affymetrix, Inc.*,
   No. 17-01394, 2018 WL 3752752 (S.D. Cal. Aug. 6, 2018) ............................. 14

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
   421 U.S. 168 (1975) ........................................................................................... 15

*Shared Med. Res., LLC V. Histologics, LLC*,
   No. 12-0612, 2012 WL 5570213 (C.D. Cal. Nov. 14, 2012)............................. 20

*Thomas v. Cate*,
   715 F. Supp. 2d 1012 (E.D. Cal. 2010) ............................................................. 16

*United States v. City of Los Angeles*,
   No. 11-00974, 2023 WL 6370887 (C.D. Cal. Aug. 28, 2023).................... 15, 16

**Federal Statutes**

12 U.S.C. § 5531(c) ..................................................................................................... 4

12 U.S.C. § 5565............................................................................................................ 6

**Other Authorities**

Fed. R. Civ. P. 30(b)(6) ...................................................................................11, 19, 20

Fed. R. Civ. P. 37............................................................................................................ 1

Pursuant to Fed. R. Civ. P. 37, defendant SoLo Funds, Inc. ("SoLo") files this motion to compel production of documents and interrogatory responses by plaintiff Consumer Financial Protection Bureau's ("Bureau"). The specific orders SoLo seeks as to the specific at-issue requests are set forth at the end of section below, and on the proposed order.

In this lawsuit the Bureau alleges numerous violations of consumer credit laws by SoLo – a fintech company that provides an app-based platform through which individuals make short-term small-dollar loans to other individuals who need help with short-term and emergency needs, such as to buy medicine or repair a car. The implications of the suit could be existential for SoLo; the Bureau seeks to shut down SoLo's platform in more than twenty states and to obtain relief, including civil money penalties, that threaten to cripple SoLo's entire operation and ability to keep the platform up everywhere else.

Despite the importance of the stakes, the Bureau has given SoLo's written discovery requests the back of its hand. SoLo's motion to compel focuses on two issues. First, for many requests, the Bureau has failed to conduct even a rudimentary search for responsive information. Second, the Bureau also has improperly asserted privilege over "tens of thousands" of documents, most of which it has not reviewed (or even searched for). Declaration of Levi W. Swank, ¶ 3, Ex. 1, Entry 150 (submitted herewith).

SoLo has sought discovery from the Bureau so that it can uncover any and all facts that may relate to its defenses, including the products of the government's nearly four-year investigation of SoLo and its analysis of the relevant consumer loan markets. In response, other than consumer complaints, the Bureau has produced in full only *a few hundred* of its own documents, most of which are publicly available on the Bureau's website or redacted of all substantive content, and has categorically refused to respond to many interrogatories. The Bureau has refused to even click a button and query its own electronically-stored records for responsive information.

Through a deposition conducted on February 12, 2025, the Bureau witness admitted that the first time the Bureau appears to have even attempted a search for non-public documents, at least in response to DRs 5, 26-27, 29, and 40-46 in SoLo's October 15 requests that are at issue here, was less than a week ago, on February 7. *Id.* ¶ 8, Ex. 9 at 8-9.[1] He admitted that at least some searches he ran returned only a "few dozen [or] less than a hundred" results, even without applying custodian limitations. *Id.* ¶ 8, Ex. 9 at 13. Obviously, in today's world of electronic searching and discovery it takes only minutes – and at the most, hours – to identify potentially-responsive documents. *Id.* ¶ 8, Ex. 9 at 25-26, 36. Instead of lifting a finger, the Bureau for the at-issue requests simply gathered what Bureau attorneys were "already aware of without conducting a search." *Id.* ¶ 11.

The Bureau apparently has much more to give, as it has *withheld* "tens of thousands" of documents from SoLo based on privilege assertions. *Id.* ¶ 3, Ex. 1, Entry 150. For its part, SoLo has produced more than *fifty thousand* documents to the Bureau. Swank Decl. ¶ 12. The Bureau asserts that *every one* of its non-public documents and internal communications, *and even many of its communications with third-parties*, are privileged. Swank Decl. ¶ 3, Ex. 1; *id.* ¶ 5, Ex. 6. But, as shown below, the privilege assertions that are the subject of this motion have no basis in fact or law.

The Bureau's determined efforts to block discovery that is essential to SoLo's defense is actively prejudicing its ability to support the 2+ million individuals who use the SoLo platform and to protect itself against an enforcement action that threatens its very existence as a company. Based on informal discovery conference with Magistrate Richlin, the Bureau's expected responses will be to cry burden, aver that it is well-established it can claim privilege over documents containing facts and matters relevant to cross-examination, and claim that "asymmetric discovery" in a

---

[1] The deposition transcript page numbers referenced herein are to the physical PDF page number. Relevant testimony cited herein has been highlighted.

matter like this is just plain normal. That the Bureau is a large federal agency and has many responsive and not responsive documents in its possession is no excuse for such behavior. The Bureau is no different than many private litigants in that regard. If anything, the Bureau should be held to a higher standard. The Bureau's claim to asymmetric discovery has no basis in the Federal Rules of Civil Procedure and is particularly inappropriate as applied to an agency, like the Bureau, that is part enforcement agency and part think-tank. SoLo has the right under the Rules to defend itself on a level playing field. The Court should grant SoLo's motion to compel and, given the imminent deadline to file for summary judgment on March 19, 2025, order the Bureau to fully respond to these requests within seven (7) days.

## I.    The Court Should Compel the Bureau to Search For Documents Concerning the Short-Term Small-Dollar Credit Market and Loan Costs (DRs 40-46).

DRs 40-46 seek the production of documents concerning the need and market for short-term small-dollar loans and emergency credit (*i.e.*, the type of credit products that include loans available on the SoLo platform and alternative credit products), the Bureau's efforts and pleas to establish a more vibrant and consumer-friendly market for such loans, comparisons of the features and characteristics of loans available through the SoLo Platform with other credit options (if any), and other documents relevant to potential benefits to consumers and competition. *See* Swank Decl. ¶ 6, Ex. 7 at 49-59. There is an entire division of the Bureau, outside of its Enforcement Division – called Research, Markets, and Regulation – that looks at and reports on precisely these issues. Based on its relevance and proportionality objections, however, the Bureau produced only "certain publicly available information" it was "already aware of without conducting a search." *See* Swank Decl. ¶ 11.

DRs 40-46 seek documents that are crucial to SoLo's defense. The Bureau has urged the short-term small-dollar loan industry to "develop a more vibrant,

competitive market for small consumer loans" (Dkt. No. 35-1 at 18-19), and SoLo has done just that. The SoLo platform, through which consumers can request small-dollar loans *on their own terms* from other consumers, has served as lifeline for hundreds of thousands of low-income and credit-invisible consumers facing an emergency need for credit, many of whom have nowhere else to turn because even a payday loan is out of reach. For a $100 loan, the average tip offered is $10.40 and the average donation offered is $6.20 (Dkt. No. 31 ¶ 75) – collectively, less than half the cost of a bounced check. There are no hidden fees or costly debt traps. And every loan request includes the borrower's explanation for why another community member should assist them by funding their loan. These requests, examples of which are provided below, speak volumes to the needs that SoLo has met:

| asthma nebulizer need ASAP | please help I'm so hungry |
|---|---|
| Babys medicine & Formula ASAP please | help i really need gas please |
| Rent coming up, please help! | Medical emergency |

Swank Decl. ¶ 10. The SoLo marketplace is more than a platform for peer to peer lending: it is a community where consumers – borrowers and lenders – support each other financially when the need arises.

This is relevant because to prove Count V, the Bureau must show that any consumer harm "is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. §5531(c). The statute requires a "flexible cost benefit" analysis. *See FTC v. Walmart Inc.*, 664 F. Supp. 3d 808, 833 (N.D. Ill. 2023) (describing identically worded language in 15 U.S.C. § 45(n), on which CFPA's definition of "unfair" is based), *motion to certify appeal granted*, No. 22-3372, 2024 WL 5054916 (N.D. Ill. Oct. 18, 2024). Providing a platform where consumers who have no other humane financing options can obtain small-dollar loans from other

consumers to purchase groceries, baby formula, and medicine is a clear countervailing benefit, and documents in the Bureau's possession discussing the need for innovation in the marketplace, the high-cost of traditional short-term small-dollar loans, and the lack of available alternatives will prove that. *See, e.g.*, *FTC v. Windward Marketing, Ltd.*, No. 96-615, 1997 U.S. Dist. LEXIS 17114, *30-31 (N.D. Ga. Sept. 16, 2008) (assessing whether "Defendants' business model . . . provide[d] any advantage over other payment options" and whether it had "a positive impact in the marketplace").

The Bureau asserts that none of this is relevant to Count V because an unpublished out-of-circuit district court decision observed that "depriv[ing] consumers of money they were not legally obligated to repay" is "a clear financial harm without a possible countervailing benefit." *Consumer Fin. Prot. Bureau v. NDG Fin. Corp.*, No. 15-5211, 2016 WL 7188792 (S.D.N.Y. Dec. 2, 2016). But the defendants there "did not even both proffering" a benefit (*id.*), whereas SoLo has. Nor has a finder of fact ruled that shown loans are unenforceable – the Bureau has reached that conclusion on its own and withheld discovery solely on that basis. A party may not object to discovery as to one element of a claim simply because it believes that it can prove the other elements. The Bureau's arguments are appropriate for summary judgment or trial, not as a basis to withhold discovery.

The Bureau's similar contention that the countervailing benefits analysis required by the statute may only focus on whether there is a direct countervailing benefit to the specific conduct challenged in the Amended Complaint – namely, collecting on an unenforceable loan – is, likewise, an argument for summary judgment. Even if it were not, precluding SoLo from collecting on platform loans on behalf of the lender would quickly make it financially untenable to maintain the platform that has helped hundreds of thousands of consumers meet dire financial needs. That is a relevant countervailing consideration. *See, e.g.*, *Am. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957, 975 (D.C. Cir. 1985) (considering "the potential costs

1   that the proposed remedy would impose on the parties and society in general"); *FTC*

2   *v. J.K. Publications, Inc.*, 99 F. Supp. 2d 1176, 1201 (C.D. Cal. 2000) (noting that

3   "increase in services . . . to consumers" associated with alleged consumer injury

4   constituted a potential countervailing benefit).

5        The requested discovery is also relevant beyond Count V. The Bureau is

6   requesting an award of civil money penalties under 12 U.S.C. § 5565. Under the

7   statute, a variety of factors must be considered by the Court, including "the severity

8   of the risks to or losses of the consumer," which implicates the dire need and lack of

9   available alternatives and/or costs associated with such alternatives, and "such other

10  matters as justice may require." SoLo submits that justice does require evaluating

11  SoLo's good work in creating a more equitable, transparent, and humane market for

12  short-term small-dollar credit – the very work that the Bureau itself has said is so

13  desperately needed. The Bureau may take a different position in the context of this

14  enforcement action, but that is an issue for the Court to decide at summary judgment

15  or trial, not a basis to curtail discovery.

16       The Bureau's proportionality objection is also misplaced. As an initial matter,

17  and as shown above, the information sought is of exceptional importance, and SoLo

18  has no other means by which it can obtain internal Bureau documents that will

19  substantiate the countervailing benefits of the platform to both consumers and

20  competition. The Bureau is uniquely positioned to have such documents because it

21  claims to be a premier consumer finance research agency and think-tank. In terms

22  of the burden, though it is not SoLo's obligation to design for the Bureau a reasonable

23  search, SoLo is nonetheless offering certain compromises to address the Bureau's

24  purported proportionality concerns. To reiterate, SoLo is not seeking documents and

25  communications internal to the Enforcement Division, so those can be set aside.

26  Rather, it is seeking responsive documents and communications with, among, or in

27  the possession of the Division of Research, Markets, and Regulation. The Bureau's

28  Senior Information Technology Specialist confirmed that the Division has its own

document repository (*i.e.*, SharePoint site) that can be searched using keywords and proximity limiters. *See* Swank Decl. ¶ 8, Ex. 9 at 48-49. Likewise, the Bureau's email system can be searched using keywords, proximity limiters, and limited to custodians within Research, Markets, and Regulation. *Id.* at 24, 29. A good place to start would be using keywords from the handful of public pronouncements the Bureau has made on these issues, including those produced by the Bureau and cited in SoLo's pleadings, as well as references to SoLo itself. These searches, within the narrow repositories described above, should substantially address the Bureau's proportionality and privilege concerns (if any).

Thus, SoLo is seeking the following order: That the Bureau conduct a reasonably diligent search for information responsive to DRs 40-46 within the SharePoint site of the Division of Research, Markets, and Regulations, and within the emails of custodians employed by the Division of Research, Markets, and Regulation likely to have responsive information, using keywords and proximity limiters (if necessary), and that the Bureau produce or, if it asserts privilege, log the responsive documents.

## II.    The Court Should Compel the Bureau to Search For and Provide Exculpatory Information Concerning SoLo Funds (DR 5; ROG 21).

Document Request 5 seeks documents generated by the Bureau reflecting any favorable statement, commentary, or analysis concerning SoLo Funds, the SoLo platform, or SoLo's founders, including statements reflecting the benefits of the SoLo platform and/or loans available through the platform (Swank Decl. ¶ 5, Ex. 7 at 10-13), and Interrogatory 21 seeks the identity of any Bureau officials or employees who have expressed concerns regarding the impact of this lawsuit or the pre-suit investigation on consumers or the availability of credit (*id.* ¶ 7, Ex. 8 at 33-35). This information, too, is vital to SoLo's defense, including for SoLo to demonstrate that any purported consumer harm is outweighed by benefits to consumers and competition in the marketplace, the calculation of any civil money penalty, and

SoLo's affirmative defenses that it made good-faith efforts to comply with applicable law (Twelfth Defense) and that there are financial or other benefits to consumers that outweigh or offset any purported injury (Fourteenth Defense). *See* Dkt. No. 58 (Answer). The Bureau did not move to strike these defenses, so the Bureau cannot now argue that SoLo is precluded from obtaining discovery relevant to them.

During the informal discovery conference, Bureau attorneys said that only the Bureau's official public position (*i.e.*, that SoLo is violating the law) is relevant. That is absurd. SoLo is entitled to understand the informed views of Bureau staff who research markets and competition, just as the Bureau is entitled to hear the views of SoLo employees regardless of what the company's official position is. Nor does the unpublished non-binding out-of-circuit district court case cited by the Bureau – *CFPB v. Navient*, No. 17-101, Dkt. No. 88 (M.D. Pa. May 4, 2018) – support blocking SoLo's efforts to discover exculpatory information about itself in the Bureau's possession. In *Navient*, the defendant sought draft rulemakings and internal documents concerning fourteen rules and regulations to show that agency staff supported its legal arguments about the concerns underlying such rules and competing interpretations. The Court held that those preliminary policy debates were not legally relevant to whether Navient violated the rules and regulations. *Id.* at 10. This case is different. SoLo is not seeking the Bureau's legal opinions, nor is it seeking internal deliberations that would, for example, cast doubt on the enforceability or meaning of enacted statutes or regulations. Rather, it is seeking purely factual information and observations specific to SoLo and its founders and the good work they do. Nor did Navient raise the argument that there were countervailing benefits to consumers and competition, whereas here that issue is a centerpiece of SoLo's defense. These requests seek exculpatory information in the Bureau's possession, which courts have routinely compelled the Bureau to provide. *See Consumer Fin. Prot. Bureau v. Brown*, 69 F.4th 1321, 1325 (11th Cir. 2023) (exculpatory facts "fair game").

1   The Bureau also appears to assert privilege objections over all or substantially

2   all documents that would be responsive.  But, as SoLo has repeatedly clarified, it is

3   not seeking intra-Enforcement Division documents or communications (nor is SoLo

4   even asking the Bureau to log those documents).  The more modest search that SoLo

5   is requesting – *i.e.*, documents and communications with, among, or in the possession

6   of personnel outside of the Enforcement Division – should resolve any

7   proportionality concerns that remain.  The Bureau could, for example, search the term

8   "SoLo," "SoLo Funds," "Travis Holoway," and "Rodney Williams" across its

9   emails, chat messages, and SharePoint for custodians outside of the Enforcement

10   Division.  If even that returned too many results to review, proximity limiters may be

11   employed (*e.g.*, "benefit," "help," "consumer," "need," "good," etc.).  Given the

12   technical capabilities of SharePoint and the Microsoft 365 environment, as described

13   above, there are any number of ways to readily test different searches to identify a

14   reasonable corpus of documents to review.  Simply doing nothing is unacceptable.

15   Thus, SoLo is seeking the following order:  That the Bureau (i) conduct a

16   reasonably diligent search using keywords and proximity limiters for information

17   responsive to DR 5 within the emails and chats of personnel outside of the

18   Enforcement Division, and within SharePoint, excluding SharePoints belonging to

19   the Enforcement Division, and that the Bureau produce or, if it asserts privilege, log

20   the responsive documents; and (ii) that the Bureau perform reasonable due diligence

21   including speaking to relevant Bureau staff in the Division of Research, Markets, and

22   Regulation, in order to fully respond to ROG 21, and then provide a response.

23   **III.    The Court Should Compel the Bureau to Search for Non-Public**

24   **Documents and Communications Relevant to How Consumers**

25   **Understand the Statements the Bureau Believes Are Misleading (DRs 26,**

26   **27, 29).**

27   Count I alleges that because most loans included a tip or donation, SoLo

28   violated the CFPA by deceptively advertising that consumers could obtain loans on

the SoLo marketplace with "no interest," "0% APR," or "0% interest." AC ¶¶117-120. Count II similarly alleges that SoLo violated the CFPA by providing borrowers who offered tips or donations with deceptive loan disclosures that described the "cost of credit," "finance charge," and "amounts [] paid to others on the consumer's behalf" as $0. *Id.* ¶¶ 122-23.

An act or practice is deceptive if "(1) there is a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances, and (3) the representation, omission, or practice is material." *CFPB v. Gordon*, 819 F.3d 1179, 1192-93 (9th Cir. 2016) (citation and quotation marks omitted).

Because the Bureau must prove, inter alia, that a reasonable consumer would have understood the terms "interest," "cost of credit," etc. to encompass "tips" or "donations," SoLo asked the Bureau for all studies, reports, surveys, commentary, publications, reviews, or analyses that reflect how consumers understand these terms. *See* Swank Decl. ¶ 6, Ex. 7 at 30-36. As noted above, the Bureau is part enforcement agency and part think-tank. Its responsibilities include receiving and studying consumer complaints, promoting financial education, and monitoring financial markets and products for risks to consumers. SoLo is seeking documents in the possession of the two relevant divisions outside of Enforcement: the Division of Consumer Response and Education, and the Division of Research, Markets, and Regulations.

Despite lodging several boilerplate objections, the Bureau committed to "conducting a reasonable search" for responsive documents, and did not limit its search to publicly available documents. *See id.* But during the parties' meet and confer, the Bureau took the position that it had conducted no search except to produce those publicly available documents that it was "immediately aware" of based on its responses to DRs 40-46. *See* Swank Decl. ¶ 11. The Bureau attempts to eschew its obligation to conduct a reasonable diligent search by asserting that such a search

would be disproportionate to the needs of the case, and that all non-public Bureau documents are privileged for one reason or another.

In terms of proportionality, despite lodging a boilerplate relevance objection (as it did in response to nearly *every* request), the Bureau did not contest at the meet and confer or before this Court that the information sought is irrelevant. Nor could it. Reduced to their essence, DRs 26-27 and 29 ask for the facts in the Bureau's possession concerning how consumers understand the exact words and phrases that the Bureau believes SoLo used misleadingly. The Bureau has also agreed to provide Rule 30(b)(6) testimony on these topics. Part of the Bureau's mission – conducted outside of the Enforcement Division and primarily by non-attorneys – is to research and publish reports and studies concerning how consumers understand and experience consumer financial products and services and how consumer behavior is shaped by them. Because this is an express element of two of the Bureau's unfairness claims, the high relevance of this information cannot be doubted.

Though it appears that the Bureau has only made a token effort to look for responsive documents, SoLo has agreed to limit these requests to the two Bureau Divisions (outside of Enforcement) discussed above. As a further compromise, and to address the Bureau's concern that the terms "APR," "interest," "cost of credit," and the like are ubiquitous, SoLo can agree to to limit these requests to documents related to small-dollar loans – the type of product available on the SoLo platform.

Finally, the Bureau's categorical privilege assertion over each and every internal document is astounding. Nor is such a sweeping privilege claim even supported by the declaration provided by Deborah Morris – the official in the Enforcement Division responsible for the day-to-day oversight of the prosecution of SoLo. SoLo is not seeking intra-Enforcement Division documents or analyses – *i.e.*, the "research and decision affecting the investigation of and litigation against SoLo Funds" referenced by Ms. Morris. Swank Decl. ¶ 5, Ex. 6 ¶ 6. Though SoLo acknowledges that certain other documents in the possession of Consumer Response

and Education and Research, Markets, and Regulation could conceivably be privileged, the way to handle that issue is by logging the documents, not performing no search at all for non-public documents.

Thus, SoLo is seeking the following order:  That the Bureau conduct a reasonably diligent search for information responsive to DRs 26-27 and 29 within the SharePoint site of the Division of Research, Markets, and Regulations and Division of Consumer Response and Education, and within the emails of custodians employed by those divisions likely to have responsive information, using keywords and proximity limiters (if necessary), and that the Bureau produce or, if it asserts privilege, log the responsive documents.

**IV.    The Court Should Compel the Bureau to Provide Discovery Responses Concerning What State Officials Told the Bureau About SoLo and Its Compliance With State Licensure and/or Usury Laws.  (DR 34; ROG 10)**

Counts IV-VI are the crux of the Bureau's case.  These counts allege that SoLo violated the CFPA because loans available through the SoLo marketplace violated fourteen state licensing and nine state usury laws.  Given that state officials are the ones with the expertise and prerogative to interpret state law and decide whether licensing or loan-cost standards are being followed (and if not, what, if anything, to do about it), SoLo asked that the Bureau produce all of its communications with officials in these states that concern SoLo (DR 34) (Swank Decl. ¶ 7, Ex. 7), and describe in detail any such communications not otherwise reflected in writing (ROG 10) (*id.* ¶ 7, Ex. 8).

The Bureau's "response" (*i.e.*, its privilege log) confirmed what SoLo suspected all along – that the Bureau had few communications with state officials at all until after the Bureau had already made the decision to initiate an enforcement action against SoLo for purported violations of the laws those officials administer and enforce.  *Compare* Swank Decl. ¶ 9, *with id.* ¶ 3, Ex. 1.  As to many of the states whose laws are at issue, the Bureau has had no communications with relevant state

officials.  The Bureau's effort to commandeer state law both violates core principles of federalism and is based entirely on guesswork.  Indeed, the Bureau has changed the list of states and/or state laws that SoLo supposedly violated no fewer than four times over the course of the last four years, including after filing this lawsuit.

In any event, the Bureau does not appear to contest the relevance of the information sought – indeed, that this information is the *most* relevant information as to whether SoLo has violated the laws that these state officials have the primary responsibility to construe and enforce.  Presumably, that is why the Bureau engaged in a (belated) effort to solicit the views of these state officials.  Nonetheless, in order to hide a treasure trove of exculpatory evidence, the Bureau has asserted a blizzard of privilege objections and heavily redacted or withheld all 140 or so documents in its possession reflecting communications with relevant state officials about SoLo, and refused to respond entirely to the interrogatory.  None of the Bureau's privilege objections has merit.

### A.    The Common Interest Privilege Does Not Apply.

As an initial matter, the communications being withheld are with state officials – *i.e.*, third parties.  The Bureau asserts that the communications are nonetheless privileged because the Bureau "shares a common interest" with state officials.  But the common interest privilege does not apply here, for a multitude of reasons.

It is black-letter law that "a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012).  Rather, "the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *Id.*

Here, the Bureau has not (and cannot) even show that the states with whom it communicated about SoLo share its desire to prosecute SoLo.  But even if it could, there must be an actual agreement with the states "in pursuit of a joint strategy." There is no such agreement here, either orally or in writing.  The Bureau tries to meet

this requirement by pointing to a "Memorandum of Understanding . . . on the sharing of information" between the Bureau and state officials, executed some fourteen (14) years ago. *See* Swank Decl. ¶ 3, Ex. 1. (The Bureau declined to produce the MOU to SoLo despite its request, but counsel for SoLo located it online. *See id.* ¶ 13, Ex. 10.) But the asserted "common interest in regulating companies . . . and enforcing compliance with state and federal laws" (*id.* ¶ 3, Ex. 1), is far too broad and indefinite to ever be enforced. It is the federal government equivalent to dozens of corporations all entering into common interest agreements on the grounds of their common interest in defending against any and all claims brought by the federal government at any point in the future about anything. No court would ever enforce such an agreement.

In any event, the MOU is clearly not a common interest agreement at all; rather, it is an agreement to keep certain narrow categories of information confidential. *See Regents of Univ. of California v. Affymetrix, Inc.*, No. 17-01394, 2018 WL 3752752, at *4 (S.D. Cal. Aug. 6, 2018) ("An agreement to keep information confidential is not an agreement to pursue a joint strategy."). That the MOUs are not common interest agreements is underscored by the Bureau making no effort to invoke or reference the agreement in the communications at issue, as far as SoLo can tell. *See* Swank Decl. ¶ 4, Exs. 2-5. No communications assert the existence of a confidentiality agreement, and for some the Bureau makes a unilateral "request" that the state keep the outreach confidential, which is inconsistent with a prior agreement to do so. *Id.*

Though more is not necessary, even if the MOU were a common interest agreement, the only two categories of information that the Bureau agreed to keep confidential – personally identifiable information ("PII") of consumers and "Confidential Supervisory Information" – are not implicated here. *See* Swank Decl. ¶ 13, Ex. 10. The Bureau does not have supervisory authority over SoLo, a small fintech, nor is SoLo aware of any of the referenced state agencies having conducted a supervisory examination of it. The Bureau has in any event waived any privilege

claim based on confidential supervisory information by not asserting the bank examination privilege on its log.

**B.    The Deliberative Process Does Not Apply and/or Is Overridden by SoLo's Substantial Need for This Information.**

Even if third-party disclosure did not vitiate the privilege, there is no underlying privilege to assert.[2]    The Bureau asserts that a subset of the communications – those occurring before it filed the Amended Complaint – are subject to the "deliberative process privilege."    But that privilege only protects documents that are "predecisional."    Here, few of the communications with state officials listed on the Bureau's log are "predecisional" because they predominantly occurred after December 11, 2023 when the Bureau informed SoLo that it had decided to initiate a public enforcement action against it, and after January 25, 2024 when it received a draft consent order from the Bureau.    *Compare* Swank Decl. ¶ 9, *with id.* ¶ 3, Ex. 1.    These communications were thus not "prepared in order to assist an agency decisionmaker in arriving at his decision," because the decision had already been made.    *United States v. City of Los Angeles*, No. 11-00974, 2023 WL 6370887, at *7 (C.D. Cal. Aug. 28, 2023) (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)).    That the Bureau later changed its mind about what specific state laws it believes SoLo violated and, as a result, filed an Amended Complaint does not trigger application of the privilege.    After all, a plaintiff can always change their mind, and always seek to amend their complaint. That does not mean the deliberative process privilege applies in perpetuity.

---

[2] SoLo does not address the assertion of attorney-client privilege further because "Under the attorney-client privilege, it is a general rule that attorney-client communications made in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality."  *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (quotations omitted).    Here, all of the communications and information sought are with third-party state officials and employees.

Even if the deliberative process privilege did apply here, however, the privilege is only a qualified one, and SoLo's "need for the materials . . . override[s] the government's interest in non-disclosure." *United States v. City of Los Angeles*, No. 11-00974, 2023 WL 6370887, at *8 (C.D. Cal. Aug. 28, 2023). All four factors a Court considers in making this determination weigh strongly in favor of overriding the privilege here. *See id.* (discussing factors). The information is of extraordinary relevance, inasmuch as these state officials are responsible for applying and enforcing state law, and information concerning the views of these officials is not otherwise available. The government is a party in this case, which weighs in favor of disclosure. *See Thomas v. Cate*, 715 F. Supp. 2d 1012, 1044 (E.D. Cal. 2010). And disclosure would not "hinder frank and independent discussion regarding contemplated policies and decision." *City of Los Angeles*, 2023 WL 6370887, at *8.

## C. The Law Enforcement Privilege Does Not Apply and/or Is Overridden By SoLo's Substantial Need for This Information.

The Bureau also asserts the so-called law enforcement investigative privilege over this information. "It is unclear [] whether and to what extent the law enforcement investigative privilege is good law within the Ninth Circuit." *Hereford v. City of Hemet*, No. 22-00394, 2023 WL 6813740, at *10 (C.D. Cal. Sept. 14, 2023). Even if the privilege is good law in this Circuit, it protects only "investigative files." *City of Los Angeles*, 2023 WL 6370887, at *8. The documents and information that SoLo is seeking here, however, are emails and oral communications with third-parties, most of which occurred long after the investigation had closed, not investigative files. Nor are the underlying concerns driving the privilege – which "protects against disclosures that would reveal confidential sources, law enforcement techniques, and the identities of witnesses and law enforcement personnel" – implicated here. *See Novoa v. Geo Grp., Inc.*, No. 17-02514, 2020 WL 6694317, at *5 (C.D. Cal. Oct. 8, 2020). The Bureau has already provided SoLo with the names of these public officials, nor are they confidential witnesses. Requesting that state

-16-

officials provide their view as to whether SoLo has violated the laws those state officials are responsible for administering is hardly a confidential law enforcement "technique."  It is a basic step that any enforcement agency conducting even rudimentary due diligence would have taken long before it decided to initiate a public enforcement action.

The Bureau has submitted the Declaration of Deborah Morris in support of its assertion of law enforcement investigative privilege here.  But all the declaration says as to the investigative privilege is that "disclosure of such communications . . . threatens to reveal . . . an important law enforcement and information-gathering technique."  Swank Decl. ¶ 5, Ex. 6 ¶ 20.  But the Bureau has already disclosed that obvious so-called "technique" to SoLo.  The only other relevant statement contained in the declaration is the assertion that states "may refuse to share [] information with the Bureau in the future, or withdraw from or refuse to enter into new information-sharing agreement," if confidentiality is not maintained.  *Id.* ¶ 21.  But, as SoLo has shown above, the Bureau has not shown that any of the information it is seeking is even covered by the MOU, let alone that all of the information it is withholding is.  Regardless, nothing would prevent the Bureau and States from entering into actual common interest agreements in connection with particular matters where they have a common interest, which would protect their communications from disclosure in litigation.  The Bureau chose not to do that here.

But even if the privilege did apply here, it too is overridden by SoLo's substantial need for this information, as explained above.  *See Al Otro Lado, Inc. v. Wolf*, No. 17-2366, 2020 WL 3487823, at *3 (S.D. Cal. June 26, 2020) (holding that if "the potential benefits of disclosure outweigh the potential disadvantages," the privilege will be "set aside").  State officials are uniquely situated to provide information on the complex state legal and regulatory regimes they administer.  That is presumably why the Bureau (mostly belatedly) contacted some of them in the first place.  Both SoLo and the Court are entitled to understand what information those

state officials have provided.  The availability of a platform that serves as a lifeline for its 2+ million users, many of which are low-income and have nowhere else to turn, hangs in the balance.  *See Hereford v. City of Hemet*, No. 22-00394, 2023 WL 6813740, at *11 (C.D. Cal. Sept. 14, 2023) (granting motion to compel and overriding assertion of law enforcement investigative privilege "in light of the seriousness of Plaintiffs' allegations and the importance of the desired materials to proving Plaintiffs' core claims").  The potential benefits to the case and SoLo's defense far outweigh the minimal (if any) disadvantages to providing this information subject to the stipulated protective order.

**D.    Communications From Third-Party State Officials Are Not the Bureau's Protected Work Product.**

Finally, the Bureau asserts that its communications with third-party state officials are attorney work product.  In this Circuit, the work-product doctrine "must be narrowly construed."  *In re New Century*, No. 07-0931, 2009 WL 10691336, at *5 (C.D. Cal. Dec. 7, 2009).  "The attorney-work-product doctrine generally does not shield from discovery documents that were not prepared by the attorneys themselves, or their agents, in the course of or in anticipation of litigation."  *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158, 1166 (2d Cir. 1992); *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989) ("The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things *prepared by a party or his representative* in anticipation of litigation.") (emphasis added).

Here, SoLo is not seeking the Bureau's "mental impressions, conclusions, opinions, or legal theories" – rather, it seeks (i) any factual information that was provided to state officials by the Bureau; and (ii) what state officials told the Bureau in writing or orally about SoLo, including state officials' views of whether SoLo was in violation of their licensure and/or usury laws.  *See Davis v. Rumsey Hall Sch., Inc.*, No. 20-01822, 2023 WL 4417549, at *12 (D. Conn. July 10, 2023) (communications

from third parties in response to attorney letter "do not consist of the type of information the work product doctrine protects or was designed to protect"). SoLo has substantial need for the factual information relayed to state officials in order to understand the basis for their conclusions or statements to the Bureau. *See Admiral Ins. Co.*, 881 F.2d at 1494 ("Although the rule affords special protections for work-product that reveals an attorney's mental impressions and opinions, other work-product materials nonetheless may be ordered produced upon an adverse party's demonstration of substantial need or inability to obtain the equivalent without undue hardship."). To the extent the Bureau contends that it revealed certain concrete mental impressions or legal theories in communications with state officials, that information can simply be redacted from the documents and withheld from its interrogatory response.

Thus, SoLo is seeking the following order: That the Bureau produce all documents responsive to DR 34 that it withheld on the basis of an asserted privilege, and provide a full and complete response to ROG 10 notwithstanding its privilege objections.

**V.    The Court Should Compel the Bureau to Provide Information Concerning the Basis For Its Contentions That SoLo Violated State Usury Limitations and Licensing Requirements (DR 35; ROG 4).**

Not only has the Bureau attempted to shield its communications with third-party state officials about the state laws underlying Counts IV-VI, but it also has refused to provide information in its possession – *e.g.*, statutes, regulations, manuals, bulletins, advisory opinions, or other formal or informal guidance – that supports its contentions that SoLo has violated these laws. *See* Swank Decl. ¶ 6, Ex. 7; *id.* ¶ 7, Ex. 8. (DR 35 and ROG 4 are the written discovery equivalents of Rule 30(b)(6) Topic 5, discussed with the Court during the February 7, 2025 informal discovery conference. To the extent the Court grants SoLo's Motion as to these written

discovery requests, SoLo will voluntarily withdraw the associated Rule 30(b)(6) topic.)

The Bureau responded to DR 35 by stating that it "did not identify any documents related to the allegations in the Amended Complaint responsive to this Request," but answered DR 35 "[s]ubject to and without waiving [its] objections" based on work product and attorney-client privilege. Likewise, the Bureau responded to ROG 4 by stating that it would not identify any sources of guidance except those cited in the Amended Complaint. Thus, it appears that the Bureau has selectively disclosed some information (cited in the Amended Complaint), but is withholding other information in its possession, custody, or control on privilege grounds. This is improper. *See Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and shield."); *Shared Med. Res., LLC V. Histologics, LLC*, No. 12-0612, 2012 WL 5570213, at *2 (C.D. Cal. Nov. 14, 2012) ("If a party could use the privilege as both a sword and a shield, then the party could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truthseeking process.") (quotations omitted).

Again, SoLo is not seeking the Bureau's internal work product analyzing any of statutes, regulations, manuals, bulletins, advisory opinions, or other formal or informal guidance. Rather, it is simply seeking an identification or copies of these documents. Fundamental principles of due process and fair notice at least require the Bureau to identify all sources of authority it is using to prosecute SoLo for violations of federal law. It may be that no such information exists, other than the statutes cited in the Amended Complaint, and that the Bureau is simply seeking to enforce in this lawsuit its unenlightened view of what state law proscribes. To the extent that is the case, the Bureau should be compelled to state that explicitly, and not "subject to" its privilege objections.

Thus, SoLo is seeking the following order:  That the Bureau produce all documents in its possession, custody, or control responsive to DR 35, and provide a complete response to ROG 4 listing all sources of authority or guidance for the Bureau's contentions that SoLo has violated state licensure and/or usury laws.  If the Bureau has no information in its possession, custody, or control other than the sources specifically identified in its Amended Complaint, the Bureau is required to unequivocally state that in response to ROG 4.

Respectfully submitted,

Dated:  February 13, 2025      By:    */s/ Laura A. Stoll*
LAURA A. STOLL (SBN 255023)
*LStoll@goodwinlaw.com*
LEVI W. SWANK (admitted *pro hac vice*)
*LSwank@goodwinlaw.com*
**GOODWIN PROCTER LLP**

Attorneys for Defendant:
SOLO FUNDS, INC.

-21-

## <u>LOCAL RULE 11-6.1 CERTIFICATION</u>

The undersigned counsel of record for Defendants SOLO FUNDS, INC. certifies that this motion complies with the page and word limits specified in the Court's February 7, 2025 Order (Dkt. No. 91).


_/s/ Laura A. Stoll_
LAURA A. STOLL

1

2 **<u>CERTIFICATE OF SERVICE</u>**

3      I hereby certify that I electronically filed the foregoing with the Clerk of the

4 Court for the United States District Court for the Central District of California by

5 using the CM/ECF system on **February 13, 2025**.   I further certify that all

6 participants in the case are registered CM/ ECF users and that service will be

7 accomplished by the CM/ECF system.

8      I certify under penalty of perjury that the foregoing is true and correct.

9 Executed on **February 13, 2025**.

10

11

12                                    */s/ Laura A. Stoll*
                                     LAURA A. STOLL

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28